IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**HENRY SMITH**
Reg #05159-010                                                                                        **PLAINTIFF**

V.                          CASE NO. 4:19-CV-151-SWW-BD

**RODNEY WRIGHT,** *et al.*                                                                **DEFENDANTS**

## RECOMMENDED DISPOSITION

### I.   Procedures for Filing Objections

This Recommendation has been sent to Judge Susan Webber Wright. Any party to this suit may file written objections with the Clerk of Court, but to be considered, objections must be filed within 14 days. Objections should be specific and should include the factual or legal basis for the objection.

If parties do not file objections, they risk waiving the right to appeal questions of fact. And, if no objections are filed, Judge Wright can adopt this Recommendation without independently reviewing the record.

### II.   Background

Plaintiff Henry Smith, a federal inmate, filed this case without the help of a lawyer under 42 U.S.C. § 1983. (Docket entry #1) According to allegations in the complaint, Defendants Wright and Parker, correction officers at the Saline County Detention Center, failed to protect Mr. Smith from attack at the hands of another inmate. As a result of the

1

attack, Mr. Smith alleges, he suffered serious injuries. (#1) He further alleges that, after the attack, both Defendants Wright and Parker refused to provide him adequate medical care. (#1)

Defendants have now moved for summary judgment on all claims. In support of their motion, they offer Mr. Smith's records from his stay at the Detention Center. (#16) Mr. Smith has not responded to the motion.

### III.   Standard

Defendants are entitled to summary judgment only if the evidence, viewed in the light most favorable to Mr. Smith, shows that there is no genuine dispute about any fact that is important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322B23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986).

### IV.   Facts

According to allegations in the complaint, Mr. Smith was placed in a cell with a "derange[d]" inmate who was significantly younger than he. (#1, p. 6) On June 4, 2018, the cellmate attacked and severely beat him. (#1) Mr. Smith alleges that he suffered a concussion and a back injury in the attack, but that Defendants Wright and Parker refused to see that he received adequate medical care for those injuries. (#1)

The Defendants attached Detention Center records in support of their motion, including some of Mr. Smith's grievances, responses to grievances, and medical requests. (#18-1, #18-2) According to those records, on June 5, 2018, the day after he was

attacked, Mr. Smith wrote to Defendant Parker, explaining he had suffered a bruise on his lip, a swollen jaw, and a knot on his forehead as a result of the inmate attack. (#18-2, p.18)

On June 6, 2018, Mr. Smith submitted a Medical Request form, noting that "The Nurse examine[d] me and I told her I was attack [sic] by my cell mate and now I need Medical checkup." Medical staff responded on June 7: "You will be placed on the sick call list . . . ." (#18-2, p.17)

On June 7, 2018, Mr. Smith wrote to Defendant Parker complaining that he had a severe head injury, concussion, head pain, back pain, stiff neck, and leg numbness. (#18-2, p. 16) Defendant Parker responded on June 8, that he had seen Mr. Smith on a video and that he appeared to be, "moving around just fine," but that he would inform "them" and see if there was merit to his complaints. (#18-2, p. 16)

On June 8, Mr. Smith wrote to Sgt. Thomason, again describing the attack. Defendant Parker responded that Mr. Smith's "request has already been addressed and under review." (#18-2, p. 15)

On June 9, Mr. Smith wrote to Defendant Parker, again describing his injuries and complaining that he had not seen the nurse. He also stated that he would "quit complaining [sic] if you put me back in A-Pod and move [the inmate who attacked him] out of A-Pod since he attacked me in my sleep." (#18-2, p.14) On June 11, 2018, Defendant Parker responded that he had, "informed the nurse" but that he would not

3

move Mr. Smith back to A-pod because of "numerous request[s] to have you taken out due to the fact of what you are doing in the room at night. I am not going to go into details on here on what you are being accused of doing but there were many complaints." (#18-2, p.14)

On June 11, 2018, Mr. Smith filled out a grievance form complaining about his injuries and again requesting to be "release[d] from G-Pod." (#18-2, p.13) He complained again on June 12, but primarily about his placement in protective custody (G-pod). (#18-2, p. 12) On June 13, he again asked to be moved. (#18-2, p. 11)

On June 15, Mr. Smith asked to be put on sick call, complaining of blurred vision, head pain, stiffness in his lower legs, and dizziness. (#18-2, p.10) A staff member responded that he would be put on the sick call list. (#18-2, p.10)

On June 18, Mr. Smith complained in a grievance that he had not received any medical attention for the attack. (#18-2, p.9) On June 22, however, Mr. Smith complained that the Tylenol he had been taking for a week had not helped with pain in his neck, back, and head. Thus, apparently Mr. Smith did receive medical attention between June 15 and June 22. (#18-2, p.8)

On June 25, Mr. Smith asked to be put on the sick call list for back and neck pain. (#18-2, p.7) Medical staff responded that he was on the provider list. (#18-2, p.7)

On July 7, Mr. Smith complained that he had not seen an outside provider for his medical problems and that the anti-inflammatory medication he was provided had not

4

helped. (#18-2, p.6) Medical staff responded that Mr. Smith was never told he would see an outside provider and that he needed to finish his course of medication. (#18-2, p.6)

On July 15, Mr. Smith complained that he had been taking anti-inflammatory medication with no results. He asked to see a doctor. (#18-2, p.5) On August 5, he again asked to see a doctor about his injuries. He stated that he had seen a doctor "two weeks ago" (around the first of July) for the injuries he suffered in the attack and that he had been treated with steroid packs and anti-inflammatories. He complained, however, that the medications were not helping. (#18-2, p.4)

On August 12, Mr. Smith filed a grievance complaining about the medical care he had received since the attack. (#18-2, p.3) Defendant Parker responded that the nurse said she was treating his issues, that he was seen in sick call, that he had been seen by a provider, that the provider placed on him medication, and that Mr. Smith had refused prescribed medications. (#18-2, p.3)

On August 17, Mr. Smith complained that it had been two weeks since he was told he would see a doctor but that he still had not seen a doctor. (#18-2, p.2) Medical staff responded that he had been placed on sick call. (#18-2, p.2)

## V.  Discussion

To determine whether qualified immunity applies, the Court must determine "whether the facts alleged or shown, construed in the light most favorable to [Mr. Smith], establish the violation of a constitutional or statutory right," and "whether that

constitutional right was clearly established as of [the time of the relevant conduct], such that a reasonable official would have known that [his or her] actions were unlawful." *Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014) (quoting *Krout v. Goemner*, 583 F.3d 557, 564 (8th Cir. 2009).

    A.    Failure to Protect

To prevail on a failure to protect claim, Mr. Smith must allege and show that he was at a substantial risk of serious harm and that Defendants Wright and Parker knew of the risk he faced but disregarded it. *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007); *Lenz v. Wade*, 490 F.3d 991, 995-996 (8th Cir. 2007); *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006).

Mr. Smith faults the Defendants with negligently placing him in a cell with a younger inmate. (#1, p. 6) Negligence, however, cannot support a failure-to-protect claim. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003) (concluding that negligence, an even gross negligence, are insufficient to establish a failure to protect claim); *Tucker v. Evans*, 276 F.3d 999, 1002 (8th Cir. 2002) (explaining that "even gross negligence" is insufficient to establish a failure to protect claim) *see also Farmer v. Brennan*, 511 U.S. 825, 838 (1994) (prison official's failure to alleviate a risk that he should have perceived, but did not, is insufficient to sustain a failure-to-protect claim).

Here, Mr. Smith has not provided any evidence that either Defendant knew that the inmate who attacked Mr. Smith had mental health issues or that either had reason to


suspect that Mr. Smith was in danger simply because his cellmate was younger than he. Accordingly, the Defendants are entitled to qualified immunity on this claim.

      B.      Deliberate Indifference to his Medical Needs

To succeed with an Eighth Amendment claim based on inadequate medical care, a plaintiff must prove that he had serious medical needs and prison officials knew of the need, but deliberately disregarded it. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Scott v. Benson*, 742 F.3d 335, 339B40 (8th Cir. 2014); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

Each defendant—whether a supervisor or correction officer—can be held liable only for his or her own conduct. A supervisor cannot be held liable for the unconstitutional acts of subordinates based solely on a supervisory role. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). Of course, supervisors in a jail or detention center can be held liable if they fail to take corrective action in response to a lack of adequate medical treatment. *Schaub v. VonWald*, 638 F.3d 905 (8th Cir. 2011) (finding a prison director, who had no medical training, violated a prisoner's Eighth Amendment rights when he ignored a doctor's orders that a paraplegic prisoner needed specialized care and accommodations, and then falsely assured the sentencing judge that his facility could provide those accommodations and care); *Langford,* 614 F.3d 445 (8th Cir. 2010) (holding that a prison administrator, who had no medical training, was not entitled to qualified immunity from two prisoners' claims that

7

he failed to take any corrective action after receiving letters describing the inadequate medical care they received for their serious medical needs).

Here, the undisputed records—including Mr. Smith's own grievances—show that he received medical care throughout the times relevant to this lawsuit. He concedes that he saw the detention center nurse and an outside provider. His grievances indicate that he was prescribed medications, although he apparently refused to take at least one medication. The treatment Mr. Smith received was apparently not the course of treatment he believes he should have received; but that disagreement or dissatisfaction with the treatment provided is not sufficient to support a claim of deliberate indifference. Negligence—even gross negligence—cannot support a claim of deliberate indifference to a medical need. Here, Mr. Smith has offered no evidence to rebut the detention center records attached to the Defendants' motion. Those records show that Mr. Smith did receive medical treatment, albeit treatment that he deemed insufficient and ineffective.

## VI. Conclusion

The Court recommends that the Defendants' motion for summary judgment (#16) be GRANTED and that claims against both Defendants be DISMISSED, with prejudice.

DATED this 20th day of November, 2019.

_____
UNITED STATES MAGISTRATE JUDGE